**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | | |
|---|---|---|
| TESORO HIGH PLAINS PIPELINE COMPANY, LLC, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF INDIAN AFFAIRS, a part of the United States Department of the Interior, | ) ) ) ) ) ) ) | CIVIL ACTION NO. _____ |
| DEFENDANTS. | ) ) ) | |

## COMPLAINT

Plaintiff Tesoro High Plains Pipeline Company, LLC ("**Tesoro**"), by and through its undersigned counsel, respectfully submits this Complaint seeking, among other things, declaratory and injunctive relief for violations of the Administrative Procedure Act ("**APA**"), 5 U.S.C. § 551 *et seq.*; deprivations of Tesoro's rights protected by the Fifth Amendment Due Process Clause of the U.S. Constitution; and the Freedom of Information Act ("**FOIA**"), 5 U.S.C. § 552, and states as follows:

## SUMMARY AND NATURE OF THE ACTION

1.      This civil action is brought by Tesoro against the United States of America; United States Department of the Interior; and the United States Bureau of Indian Affairs ("**BIA**"), a part of the United States Department of the Interior.

2.      This action relates to a pipeline owned by Tesoro and a related right-of-way issued by the United States, by and through the BIA.  The pipeline was constructed in the 1950s, with the

1

initial right-of-way being issued by the BIA in 1953, and subsequently renewed/reissued on multiple occasions through June 18, 2013.  In 2017, after years of negotiations, Tesoro reached an agreement with the Mandan, Hidatsa and Arikara Nation ("**MHA Nation**," the "**Tribe**" or "**Three Affiliated Tribes**") for another twenty-eight year renewal of the right-of-way, retroactively effective to June 18, 2013.  Tesoro also negotiated with individual allottees for many years—and continues to do so—regarding renewal of the right-of-way.  Due to various obstructions and obstacles, Tesoro's extensive renewal efforts have not yet resulted in the BIA's issuance of the right-of-way renewal.  Tesoro undertook these extensive renewal efforts while in a holdover status, in accordance with 25 C.F.R. § 169.410.

3.      Eventually, the BIA initiated administrative proceedings against Tesoro.  Ultimately, the BIA recently required Tesoro to cease and desist from its use of the pipeline and set forth certain requirements necessary for Tesoro to fully and finally resolve the issues implicated in the BIA's proceedings against Tesoro related to Tesoro's use of the right-of-way during the holdover period beginning on June 18, 2013.  These requirements were set forth not only in a December 15, 2020 decision by the BIA's Great Plains Regional Director, *see* Ex. A, Notification of Trespass Determination ("**December 15 Notification**") (without distribution list), but also affirmed by the Assistant Secretary – Indian Affairs, in a January 14, 2021 decision which indicated that it constituted the BIA's final agency action with respect to the issues subject to it.  *See* Ex. B, Notice, Order on Administrative Record, and Decision ("**2021 AS-IA Decision**") (without distribution list) at 2 ("This decision constitutes a final agency action under 5 U.S.C. 704, which is judicially reviewable").

4.      Specifically, in the December 15 Notification and 2021 AS-IA Decision, the BIA required Tesoro to pay a total of $3,961,907 to the Indian landowners in the amounts of $2,247,457

for back rent and unauthorized use and $1,714,450 in interest.  Ex. A at 6; Ex. B at 2.  The BIA also required Tesoro to immediately cease and desist from its use of the pipeline.  *Id.*

5.      The BIA required that Tesoro do both of these requirements – cease and desist from use of the pipeline and pay $3,961,907 – within 30 days.  Ex. A at 6; Ex. B at 2 (affirming December 15 Notification in its entirety).  The BIA also required that the "pipeline may not be removed or disposed of unless specifically authorized by the Bureau."  Ex. A at 6.

6.      In order to fully and finally resolve the issues that were the subject of the December 15 Notification and 2021 AS-IA Decision, Tesoro timely complied with these requirements.  *See* Ex. C, December 22, 2020 Letter to BIA advising of Tesoro's compliance with the cease and desist requirement and forthcoming payment of $3,961,907; *see also* Ex. D, January 15, 2021 United States Department of Interior Bureau of Indian Affairs Acknowledgement Receipt of Payment ("**BIA Payment Acceptance**").[1]

7.      Then, on March 18, 2021 – ***more than two months** after the deadline that the BIA gave Tesoro to comply with the BIA's cease and desist and payment requirements to fully and finally resolve the issues subject of the December 15 Notification and 2021 AS-IA Decision*; ***more than three months** after Tesoro had already detrimentally relied upon the BIA's decision and ceased and desisted from its use of the pipeline*; ***more than two months** after Tesoro had detrimentally relied upon the BIA's decision and paid the more than $3,961,907 to fully and finally resolve the issues subject of the December 15 Notification and 2021 AS-IA Decision*; and ***more than one month** after the Interior Board of Indian Appeals ("IBIA") had denied the*

---

[1] Tesoro's payment was in the amount of $3,988,114, which included not only the amounts required in the December 15 Notification and 2021 AS-IA Decision, but also a seven day back rent adjustment (through December 17, 2020) and an additional interest adjustment.

*allottees' appeals*[2] – Scott de la Vega, the Associate Solicitor, General Law (Unified Region 12) within the Department of the Interior, but purporting to act in the capacity of Acting Secretary for the Department of the Interior, issued a decision purporting to vacate the December 15 Notification and the 2021 AS-IA Decision, and start the entire administrative process completely anew.  Ex. E, Decision Vacating Prior Decisions of the Assistant Secretary – Indian Affairs and the Regional Director ("**Acting Secretary's Vacatur Decision**") (without distribution list).

8.      Although the Acting Secretary's Vacatur Decision was stamped "MAR 12, 2021," the Certificate of Service confirms that it was issued by Scott de la Vega, purporting to act as Acting Secretary, on March 18, 2021 – three days *after* Rep. Debra Anne Haaland had already been confirmed as the Secretary of Interior.

9.      Shortly after the Acting Secretary issued the Acting Secretary's Vacatur Decision, which purports to entirely vacate the prior agency decisions that were the subject of the December 15 Notification and 2021 AS-IA Decision upon which Tesoro had months earlier already detrimentally relied, Tesoro learned through public reporting that Lawrence S. Roberts, a partner with the law firm of Jenner & Block LLP, was the new Chief of Staff for the Secretary of Interior. *See* Ex. F, New York Times article (Apr. 1, 2021).

10.     Mr. Roberts has been representing approximately 50 individual allottees in connection with the administrative proceedings that resulted in the December 15 Notification, 2021 AS-IA Decision, and Acting Secretary's Vacatur Decision, as well as a more than two-year lawsuit against Tesoro.  For example, he was one of the attorneys who has been suing Tesoro on

---

[2] The IBIA had proper jurisdiction when it dismissed the allottees' appeals, as the Assistant Secretary – Indian Affairs had not exercised jurisdiction over the allottees' appeals within the time prescribed in the regulations for her to do so – 15 days of her receipt of the appeals. *See* 25 C.F.R. § 2.20; 43 C.F.R. § 4.332(b).

behalf of approximately 50 individual allottees since October 2018, in connection with alleged trespass of Tesoro's pipeline on the tracts at issue here.  *See* Civ. No. 5:18-cv-1050; *JoAnn Chase, et al v. Andeavor Logistics, L.P., et al;* in the United States District Court for the Western District of Texas, subsequently transferred to Civ. No. 1:19-cv-00143-DLH-CRF; in the United States District Court for the District of North Dakota.  Mr. Roberts was also one of the attorneys with Jenner & Block[3] who have been representing approximately 50 individual allottees in the administrative proceedings, including filing a January 13, 2021 Notice of Appeal on their behalf with respect to the December 15 Notification.[4]  Ex. G, Notice of Appeal ("**Jenner Notice of Appeal**").  As set forth more fully below, the Jenner Notice of Appeal was dismissed by the Interior Board of Indian Appeals ("**IBIA**").

11.     The Acting Secretary's Vacatur Decision is improper and unlawful for a multitude of reasons.  Among other things, the Acting Secretary Vacatur Decision was ultra vires; arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; untimely and improperly issued months after the deadline that Defendants had given Tesoro to comply with the requirements for full and final satisfaction of the December 15 Notification and 2021 AS-IA Decision including payment of the $3,961,907 and cessation of its use of the pipeline, and months after Defendants knew that Tesoro had already detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision and paid more than $3,961,907 and ceased use of its pipeline; fails to make a determination that the December 15

---

[3] Mr. Roberts and other attorneys switched firms from Kilpatrick Townsend & Stockton LLP to Jenner & Block LLP.

[4] Allottees' counsel claimed in an April 9, 2021 letter to the BIA's Great Plains Regional Director that Mr. Roberts is no longer acting as counsel to the allottees.

Notification and/or 2021 AS-IA Decision were erroneous; lacks a rational or reasoned basis; violates Tesoro's Fifth Amendment Due Process rights; was issued without regulatorily-required notice and other safeguards prior to reconsideration and vacatur; and seeks to improperly deprive this Court of jurisdiction over the parties' judicial review and challenges of the prior decisions, and subject Tesoro, once again, to an agency decision-making process (which now includes prior counsel for some of the allottee landowners) on issues already decided and satisfied.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under the laws of the United States and pursuant to the APA, 5 U.S.C. §§ 701–706 and FOIA, 5 U.S.C. § 552(a)(4)(B)  This Court can grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  The Court also has federal question jurisdiction arising from a claim of a violation of an amendment to the U.S. Constitution.   Furthermore, jurisdiction is also proper because the United States is a defendant.

13.     The challenged action is subject to review pursuant to 5 U.S.C. § 702, 704 and 706. Defendants are all agencies of the United States, which has waived sovereign immunity in this action pursuant to the APA, 5 U.S.C. § 702, and claimed Due Process violations, *Temple v. Cleve Her Many Horses*, 163 F. Supp. 3d 602, 620 (D.S.D. 2016).  In this suit, Tesoro seeks only declaratory and injunctive relief.

14.     An actual, justiciable controversy now exists between Plaintiff and Defendants. Among other things, in compliance with, and in detrimental reliance upon, the December 15 Notification and 2021 AS-IA Decision (which stated on its face that it was a final agency action), Tesoro has made payment of $3,988,114 and ceased and desisted from use of the Pipeline in order

to fully and finally resolve and satisfy the claims, issues, and BIA's requirements that were the subject of the December 15 Notification and 2021 AS-IA Decision related to Tesoro's holdover and use of the right-of-way from June 18, 2013 through December 17, 2020.  The Acting Secretary's Vacatur Decision now purports to entirely vacate the prior December 15 Notification and 2021 AS-IA Decision with which Tesoro has already detrimentally relied and complied, purportedly seeking to subject Tesoro to entirely new and additional administrative proceedings on the very issues which Tesoro has already fully and finally resolved through its detrimental reliance and compliance with the December 15 Notification and 2021 AS-IA Decision and the BIA's requirements therein.

15.    Venue and personal jurisdiction is proper in this district under 28 U.S.C. § 1391(e) and FOIA, under 5 U.S.C. § 552(a)(4)(B).  Defendant BIA has offices in the District of North Dakota, a substantial part of the events or omissions giving rise to this claim occurred in this District, and the lands held in trust by the United States subject to this action over which the Pipeline's right-of-way runs are situated in this District.  Documents improperly withheld in violation of FOIA are located in the BIA's offices in North Dakota, 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16.    Plaintiff Tesoro is a Delaware limited liability company headquartered in Findlay, Ohio.  Tesoro owns the approximately 500-mile long Tesoro High Plains Pipeline system, including the approximately 15-mile segment (the "**Pipeline**") that crosses the southwest corner of the Fort Berthold Indian Reservation (the "**Reservation**") that is at issue here.  Tesoro is also the party that is the subject of the December 15 Notification, the 2021 AS-IA Decision, and the Acting Secretary's Vacatur Decision.

7

17.     Defendant United States of America ("**United States**") is a sovereign nation. Defendant United States includes the United States federal government, including administrative agencies.

18.     Defendant United States holds legal title to the tracts of Indian land on the Reservation, including land situated within the Reservation over which the Pipeline crosses, and holds the legal title in trust for the benefit of individual Indians.

19.     Defendant United States Department of the Interior ("**Interior**") is an agency of the United States within the meaning of the APA, 5 U.S.C. §§ 551(1); 701(b)(1), and FOIA, 5 U.S.C. § 552(f).  Debra Anne Haaland is the Secretary for the United States Department of the Interior (the "**Secretary**") and, among other things, is charged with fulfilling the United States' trust responsibilities to federally recognized American Indian and Alaska Native tribes and villages and individual Indian trust beneficiaries.  Scott de la Vega is the Associate Solicitor, General Law (Unified Region 12) within the Department of the Interior.  He purportedly issued the Acting Secretary's Vacatur Decision while acting on the Secretary's behalf.  Any injunctive decree issued by this Court should identify the official(s) responsible for compliance with such decree, including without limitation the Secretary and Acting Secretary.

20.     Defendant BIA is an agency of the United States within the meaning of the APA, 5 U.S.C. §§ 551(1); 701(b)(1), and FOIA, 5 U.S.C. § 552(f).

## **LEGAL FRAMEWORK**

*APA*

21.     Congress enacted the APA to standardize the way federal administrative agencies propose and establish rules and regulations.  The APA also establishes a process for judicial review of agency decisions.

22.     The APA specifically establishes a procedure for judicial review for those seeking redress of grievances as a result of a agency action.  *See, e.g.,* 5 U.S.C. § 704.

23.     A court "shall" set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2).

24.     The Declaratory Judgment Act allows federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also* 5 U.S.C. § 703 (allowing for actions for declaratory judgments).

***Fifth Amendment Due Process***

25.      The Due Process Clause prohibits deprivation of "life, liberty, or property, without due process of the law." U.S. Const. amend. V.   The interests of a corporate entity are protected by the Fifth Amendment Due Process Clause.

26.     There is a constitutional violation when a party is deprived of an interest protected by the Fifth Amendment without due process of law.  Procedural due process is a condition precedent of depriving a person of a protected right.  Due process also protects certain substantive interests, such as right to the finality of an agency decision that is taken in accordance with relevant rules, facially states that it is a final agency action, and that induces material reliance by regulated parties.

27.     A government decision depriving a person of the right to "life, liberty, or property" must, at a minimum, be preceded by notice and an opportunity for the individual to be heard. Substantive due process rights cannot be violated by government action.

28.     With respect to administrative deprivations of property, a court balances three factors.  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

29.     Under 5 U.S.C. § 555, "[a] party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding ...  With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  A party's entitlement to the protections afforded by Section 555 corresponds to procedural due process.  In that respect, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  Furthermore, an agency "shall proceed to conclude a matter presented to it."  The finality of an agency decision corresponds to substantive due process owed to parties subject to the agency's decisionmaking and regulation.

**The Secretary Of The Interior and the BIA**

30.     Through a series of statutes, Congress has delegated authority for the day-to-day administration of Indian affairs to the President or the Secretary of the Interior.  *See* 25 U.S.C. §§ 2, 9[5]; 43 U.S.C. § 1457.  In turn, much of this authority has been delegated to the BIA.  *See* 25 U.S.C. §§ 1, 1a, 2; 2a.  Within the BIA, certain authority to review BIA decisions has been

---

[5] 25 U.S.C. § 2 ("The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably with such regulations as the President may prescribe, have the management of all Indian Affairs and all matters arising out of Indian relations."); *id.* § 9 ("The President may prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs . . . .").

delegated to the AS-IA's discretion, and such discretion must be exercised in accordance with specific regulatory requirements. *See*, *e.g*., 25 C.F.R. § 2.20(c) (authority to take jurisdiction over appeals to the IBIA); 43 C.F.R. § 4.332(b).

31.     Allotted lands, such as the tracts at issue here, are owned by the United States in trust for individual beneficial Indian landowners or allottees.  *Id.*  As fee owner and trustee, the United States has authority to grant rights-of-way over Indian allotments.  Under the Act of February 5, 1948, ch. 45, 62 Stat. 17, 25 U.S.C. §§ 323–328 (the "**1948 Act**"), the Secretary of the Interior is "empowered to grants rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes . . . ."  25 U.S.C. § 323.

32.     The BIA has promulgated right-of-way regulations and issued right-of-way grants at issue here.  25 C.F.R. Part 169.

*FOIA*

33.     FOIA requires agencies to make a wide range of information available to the public, subject to specifically defined exceptions.  5 U.S.C. § 552(a).

34.     FOIA imposes strict and rigorous deadlines on federal agencies when they receive a request for records pursuant to FOIA.  Specifically, an agency must determine whether to disclose responsive records and notify the requestor of its determination within 20 working days of receiving a FOIA request, and it must make records "promptly" available, unless it can establish that certain unusual circumstances are present and/or that it may lawfully withhold records, or portions thereof, from disclosure. *Id*. § 552(a)(3)(A),(a)(6); 43 CFR § 2.16(a).

35.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester.  *Id*. § 552(a)(4)(B).

36. FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculate to locate all records that are responsive to the FOIA request. *Id*. § 552(a)(3)(C)-(D).

37. FOIA requires federal agencies to expeditiously disclose requested records, *see id*. § 552, and mandates a policy of broad disclosure of government records. Any inquiry under FOIA brings with it a strong presumption in favor of disclosure.

38. Congress recognized that in certain, limited instances, records may be withheld as exempt from FOIA's broad disclosure mandate, and thus created nine categories of exemptions. *Id*. § 552(b). These exemptions, however, are narrowly construed in light of FOIA's objective of disclosure.

39. FOIA provides that a request for records must be "reasonably described." *Id*. § 552(a)(3)(A)(i); 43 CFR § 2.5. Courts have determined that a FOIA request reasonably describes the requested records so long as the agency's records custodian can locate the records.

40. U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(3)(4)(B).

41. An agency's response or lack of response to a FOIA request and/or a FOIA appeal is also subject to judicial review under the APA, which confers a right of judicial review on any person who is adversely affected by agency action, 5 U.S.C. § 702, and authorizes district courts to compel agency action that is unlawfully withheld or unreasonably delayed. *Id*. § 706(l). District courts must set aside any agency action that is found to be "arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law." *Id*. § 706(2)(A).

42.     The Department of Interior has promulgated its own FOIA regulations.  *See, e.g.,*
43 C.F.R. § 2.1 *et seq.*   Under 43 C.F.R. § 2.21(b), if the agency determines that a request will
take longer than 10 workdays to process, it must "immediately" send a written acknowledgment
that includes the request's individualized tracking number and processing track.

## FACTUAL ALLEGATIONS

### *The Tesoro High Plains Pipeline System*

43.     Tesoro owns the High Plains Pipeline system, which has been in operation since
the 1950s and transports oil from various receipt connections throughout the Bakken Region to
various delivery connections.

44.     The Pipeline at issue here is an approximately 15-mile segment of the High Plains
Pipeline System, which system crosses the southwest corner of Indian trust lands within the
Reservation.  The Pipeline crosses portions of 44 tracts of land, including 10 tracts owned by the
United States for the benefit of the MHA Nation and 34 tracts that are owned by the United States,
in part, for the benefit of individual tribal member allottees, and in part, for the benefit of the MHA
Nation.  The United States owns the tracts as trustee on behalf of the Tribe and/or individual
allottees.

45.     Pipeline rights-of-way were granted for less than 91 acres of land on these 44 tracts
on the Reservation, and the Pipeline occupies an even smaller area.

46.     The Pipeline began operating in 1953 under a series of right-of-way grants between
the United States, on behalf of the allottees and the Tribe, and Tesoro's predecessors-in-interest.
On September 18, 1953, the Superintendent for the BIA's Fort Berthold Agency, executed a Grant
of Easement for Right-of-Way for a period of 20 years.  Subsequent rights-of-way renewals were

approved, for 20 year terms, with the first commencing on June 18, 1973, and the second commencing on June 18, 1993 (the "**1993 Right-of-Way**").  Tesoro acquired the Pipeline in 2001.

*Negotiations With the Tribe*

47.     In 2013, Tesoro approached the MHA Nation and the BIA for renewal of the 1993 Right-of-Way.  The Chairman of the MHA Nation at the time directed Tesoro not to approach tribal members for consent until the MHA Nation had reviewed Tesoro's safety record and qualifications, and then, only after right-of-way renewal negotiations were complete for the tribally-owned lands.

48.     In 2017, Tesoro and the MHA Nation entered into an agreement for a renewed right-of-way, for an additional approximately 28-year term, covering all of the Tribe's interests in the 44 tracts at issue – 10 tribal tracts and all tribal interests in 15 additional allotted tracts.

*Tesoro Begins to Undertake Extraordinary Efforts to Obtain an Appraisal To Facilitate Good Faith Negotiations for a Right-of-Way Renewal*

49.     BIA regulations in effect at the time required federally-approved appraisals prior to negotiating renewal with individual landowners.  Recognizing the challenges of the federal appraisal process, which was notoriously slow, in early 2014, Tesoro proactively retained an independent, licensed appraiser to appraise all 44 tracts in accordance with the Uniform Standards of Professional Appraisal Practice ("**USPAP**") and under the direction of the Office of the Special Trustee's Appraisal Services ("**OST**").  The appraisals were completed in 2014.  They were updated in 2016.  Despite having been prepared by a certified appraiser in accordance with USPAP and under the direction of OST, the BIA failed to obtain OST review or provide approval of the appraisals—both in 2014 and 2016.

50.     Following completion of negotiations with the Tribe in 2017, Tesoro mailed offers for a renewed right-of-way totaling approximately $66,000 per acre (including an initial payment

for past use and first year bonus, as well as annual rental for the remainder of the right-of-way term) to each of the approximately 450 individual allottee landowners.[6] By comparison, the 2014 appraisal determined a fair market value for the right-of-way (for the entire duration of the right-of-way) ranging between $650 to $750 per acre, and the 2016 appraisal determined a fair market value between $850 to $900 per acre (with one tract appraising at $1,900 per acre). Thus, Tesoro's initial offer represented many multiples of the appraised fair market value. Not surprisingly, negotiations for the new right-of-way were progressing well.

51. By early 2018, Tesoro had obtained approximately 150 individual landowner consents for a renewed right-of-way, giving it majority consent in an additional eight tracts in addition to the tracts that were the subject of the tribal agreement with MHA Nation. At that time, and at the request of the Superintendent for the BIA's Fort Berthold Agency (the "**Superintendent**"), Tesoro funded a third round of appraisals to be completed under the direction of the OST. With appraisals again underway and having obtained majority consent in numerous tracts, and pursuant to an understanding with the BIA's Superintendent that the right-of-way would be approved in completed segments as majority consent is obtained for each tract, Tesoro filed its right-of-way application with the BIA on March 23, 2018. By May 31, 2018, all appraisals had been submitted for a third time to the OST for review. The OST required certain revisions.

52. The requested revisions to the appraisals submitted on May 31, 2018 were timely made by the independent appraiser, and the revised appraisals were submitted for a fourth time to the OST in August 2018. Despite having been prepared by a certified appraiser in accordance with USPAP and under the direction of OST, the BIA again failed to obtain OST review or provide

---

[6] This Complaint, at times, refers to the individual allottees as "landowners." However, they are only beneficial owners. The land is owned by the United States in trust for the individual allottees.

approval of the appraisals.  The 2018 appraisals determined a fair market value for the right-of-way (for the entire duration of the right-of-way) ranging between $800 and $850 per acre, with one tract appraising at $1,450 per acre—Tesoro's offer continued to be ***tens of multiples*** greater than the appraised fair market value.

***Certain Allottees and Their Counsel File Two Class Action Lawsuits in the District of North Dakota – Both of Which Were Dismissed***

53. On October 5, 2018, a putative class action lawsuit was filed against Tesoro on behalf of 48 individual allottees in the United States District Court for the Western District of Texas.  Civ. No. 5:18-cv-1050; *JoAnn Chase, et al v. Andeavor Logistics, L.P., et al;* in the United States District Court for the Western District of Texas.

54. This lawsuit was filed by Kilpatrick Townsend & Stockton, including Lawrence S. Roberts—who recently assumed the position of Chief of Staff of the recently-appointed Secretary of the Interior.

55. In this lawsuit, the individual allottees asserted separate "counts" for trespass and constructive trust.  They subsequently amended their Complaint to add "counts" for breach of the 1993 Right-of-Way, unjust enrichment—imposition of constructive trust, and punitive damages.

56. Tesoro obtained a transfer of the case to this district—the United States District Court for the District of North Dakota.  Civ. No. 1:19-cv-00143-DLH-CRF, ECF No. 68 (D.N.D. July 12, 2019) (notice of transfer of case).

57. On October 29, 2018, another set of plaintiffs—three individual allottees and an association—also filed a putative class action lawsuit against Tesoro.  Civ. No. 1:18-cv-217; *Tex Hall, et al v. Tesoro High Plains Pipeline Company*; in the United States District Court for the District of North Dakota.

16

58.     On April 6, 2020, the United States District Court for the District of North Dakota issued Orders dismissing both lawsuits.  The dismissal in Civ. No. 1:19-cv-00143-DLH-CRF is pending appeal before the Eighth Circuit Court of Appeals.  The individual allottees who brought the suit in Civ. No. 1:18-cv-217 dropped their appeal.

***Tesoro Continues Its Extraordinary Efforts to Obtain an Appraisal***

59.     Despite the fact that the appraisals had already been revised and completed in accordance with OST instructions, on October 31, 2018, Tesoro was notified that because the OST had been merged into the Appraisal and Valuation Services Office ("**AVSO**"), the appraisals must again be revised pursuant to an AVSO-approved Statement of Work.

60.     It was around this time, in January 2019, that the AVSO provided the BIA Regional Office and the Fort Berthold Agency with a resolution of the appraisal issues related to the Tesoro right-of-way, proposing that a market analysis of the Reservation that the AVSO had recently conducted could be used to evaluate whether Tesoro's offer satisfied the regulatory requirement to meet or exceed fair market value.  According to the AVSO's proposed solution in January 2019, Tesoro's initial offer of approximately $66,000 per acre was confirmed to far exceed the average per-acre valuation found in the recent AVSO market analysis ($1,489.54 per acre), and even the highest sales price found in that market analysis ($3,997.40 per acre).  Accordingly, the AVSO concluded that its proposed solution of using the AVSO market analysis "would certainly provide a sufficient basis for the Superintendent to conclude" that the offer by Tesoro was well in excess of the land values based on the AVSO's recent market analysis, which ensured that the landowners would receive compensation above fair market value.

61.     Despite the AVSO having already confirmed the fair market value, following delay on the part of the federal agencies, a Statement of Work for the appraisals for all 44 tracts was finally cleared and issued by the AVSO Director.

62.     Pursuant to the AVSO Statement of Work, an independent appraiser was retained by the AVSO at Tesoro's expense to conduct a fifth round of appraisals. All issues or concerns with the appraisals identified by the AVSO review appraiser were rectified, and on or about February 5, 2020, the appraiser was given the go-ahead by AVSO to complete the appraisals on all 44 tracts utilizing the same methodology as approved by the AVSO review appraiser.  The appraiser did so and provided all 44 final appraisals to AVSO on a rolling basis, as completed, in accordance with AVSO instructions.  All 44 final appraisals were completed and submitted by the independent appraiser to AVSO by May 19, 2020.

63.     Although the final appraisals had been completed and submitted to the AVSO, Tesoro was notified that AVSO would not forward the final appraisals to the BIA until first "instructed" to do so by the BIA.  Despite Tesoro's repeated calls and e-mails to both the BIA's Superintendent and Regional Director, as well as the AVSO, over the succeeding months, BIA refused to take receipt of the completed appraisals from AVSO.

64.     The Superintendent and Regional Director refused delivery in order to deprive the parties of the use of the AVSO appraisals that were completed utilizing the methodology expressly approved by the AVSO, and agreed upon by the BIA, for determining a fair market value for the right-of-way—the very AVSO-certified appraisals that the BIA's Superintendent admittedly promised the individual landowners would be provided to them more than nine months earlier, and the very AVSO appraisals that were to be used by BIA to fulfill its trust responsibilities.

65.     Indeed, after years of effort and hundreds of thousands of dollars spent on obtaining appraisals, these AVSO appraisals specific to the Pipeline right-of-way were not utilized by the BIA, because the Superintendent improperly instructed the AVSO to cease all activity relating to them and refused to accept receipt of the completed appraisals from the AVSO.

***The BIA Turns to the Allottees' Attorneys for a Purported Valuation***

66.     At the same time the Superintendent was instructing the AVSO to cease work on the AVSO appraisals that Tesoro had worked for years trying to obtain from the BIA, the BIA Superintendent and her staff were secretly working with counsel who represented certain Indian landowners to draft a notice of trespass determination.  It was during this time, on March 27, 2020, that the allottees' attorney provided the BIA with purported valuation materials, the primary portions of which had been prepared by an individual that was not even a certified appraiser (the "**Allottees' Counsel's Materials**").  In conjunction with the draft trespass determination, the allottees' counsel requested to be awarded over $40,000,000 in attorneys' fees and the individuals who prepared the Allottees' Counsel's Materials be awarded more than $4,000,000.

67.     In other words, allottees' attorneys were behind the scenes seeking big paydays for themselves and their hired "appraisers" (the main one of whom was not even a licensed appraiser), while at the same time derailing Tesoro's negotiations with allottees.

68.     The Allottees' Counsel's Materials were originally submitted to the BIA by the law firm of Pringle & Herigstad on March 27, 2020, and then—unbeknownst to Tesoro—submitted to the BIA by Kilpatrick, Townsend & Stockton, including Lawrence S. Roberts, on behalf of their clients.  *See* Ex. H, August 6, 2020 Letter from Kilpatrick, Townsend & Stockton to BIA Regional

Director (without attachments), at 6 (submitting an eight-page letter brief and enclosed materials, including the Allottees' Counsel's Materials, to the BIA without copy to Tesoro or its counsel.[7]

69.     At the same time that they were working with allottees' counsel, the Superintendent and Regional Director were refusing Tesoro's counsel's multiple requests to (i) have the BIA advise the AVSO to send the completed AVSO appraisals to the BIA, and (ii) meet with Tesoro to discuss the new offer that Tesoro was making to the Indian landowners.

70.     The net result and impact of the Superintendent's and Regional Director's approach was to deliberately squander the potential that the AVSO appraisals held for facilitating fruitful negotiations between Tesoro and allottees.  Instead, the BIA devoted its resources to working with the allottees' attorneys to issue invalid and completely unrealistic compensation expectations in a forthcoming trespass notification.[8]

***Tesoro Continues Good Faith Negotiations***

71.     Despite the conduct of the BIA officials, Tesoro continued to negotiate in good faith.  In June 2020, Tesoro increased its offer to all allottees to more than $70,000 per acre. Specifically, Tesoro offered $19,600 per acre for the past use period, and $9,000 per acre one-time bonus and $2,000 per acre annual payment for the duration of the right-of-way renewal.  Each of these amounts continued to far exceed any appraised fair market value to date.

72.     On June 3, 2020, the AVSO provided the BIA with another market analysis—the "Rights-of-way Market Analysis For Berthold" ("**Market Analysis**")—to assist the Superintendent with fulfilling her trust responsibility in granting easement rights across trust and

---

[7] Allottees' counsel never provided Tesoro a copy of this letter brief.  Tesoro first obtained this letter brief from the administrative record several months after it had been sent to the BIA.
[8] Namely, the Notification of Trespass Determination issued by the Regional Director on July 2, 2020, which is further discussed below, and which the AS-IA later vacated in its entirety on October 29, 2020.

restricted fee lands.  The AVSO explained that a market analysis was an alternative to site specific appraisals like those the BIA had refused to accept.

73.    The Market Analysis evaluated 56 other underground pipeline right-of-way transactions on the Reservation over the previous decade and considered the legal authorities governing rights-of-ways across individual Indian land (25 C.F.R. Part 169).  The Market Analysis demonstrated that the price (for the entire duration of the right-of-way) for the 56 rights-of-way for subsurface pipelines on the Reservation over the previous decade ranged from a low of $3,500 per acre to a high of $31,200 per acre, with a median of $11,900 per acre.

74.    According to the AVSO's Market Analysis, Tesoro's initial offer of $66,000 per acre (and its then-current offer of more than $70,000 per acre) would be higher than the highest amount paid for any of the 56 subsurface pipeline rights-of-way on the Reservation in the last decade that were evaluated in the AVSO's Market Analysis, and possibly ever.  Indeed, Tesoro's initial offer was over twice the highest amount paid for the 56 subsurface pipeline rights-of-way on the Reservation that were evaluated in the AVSO's Market Analysis.  And it was approximately twenty times the low end of the value range—the actual fair market value of the subsurface pipeline right-of-way.

### The Regional Director's July 2 Notification

75.    Despite having been told by AVSO that Tesoro's then-pending offer far exceeded the fair market value for a right-of-way on the Reservation, the Regional Director proceeded with issuing a July 2, 2020 Notification of Trespass Determination ("**July 2 Notification**"), which improperly relied on the Allottees' Counsel's Materials.  When the BIA's Regional Director issued the July 2 Notification, he did so with this full knowledge of the AVSO Market Analysis that had been provided to him by the AVSO (which showed fair market values much less than what Tesoro

was offering), that plans for a formal mediation were being finalized for August 5-7, 2020 between Tesoro and the allottees represented by Pringle & Herigstad, and that ongoing good faith negotiations were also continuing with numerous other unrepresented allottees based on Tesoro's offers that far exceeded any values determined by the numerous appraisals and market analyses to date.   Nonetheless, the Regional Director improperly and unilaterally issued the July 2 Notification, while depriving Tesoro and the individual landowners of the AVSO Market Analysis and the completed AVSO-approved appraisals that had been promised by the BIA's Superintendent to the individual landowners nearly a year earlier to facilitate the landowners' negotiations with Tesoro and to carry out trust responsibilities.

76.     The Regional Director's July 2 Notification derailed the parties' extensive efforts to obtain a right-of-way that would benefit all parties involved.

77.     Tesoro appealed the July 2 Notification to the IBIA.  On August 13, 2020, the AS-IA issued a notice stating that she was assuming jurisdiction over the appeal of the July 2 Notification.

78.     On October 29, 2020, the AS-IA issued her decision (the "**2020 AS-IA Decision**"), vacating the July 2 Notification in its entirety and finding numerous errors and deficiencies in the July 2 Notification.  The issues were remanded back to the Regional Director with instructions.

***Tesoro Continues Good Faith Negotiations and Makes Significant Efforts to Help the Regional Director Comply with the 2020 AS-IA Decision***

79.     After the AS-IA vacated the July 2 Notification, Tesoro continued its good faith efforts with both the allottees and the BIA.  On October 30, 2020—the day after the AS-IA's vacatur of the July 2 Notification—Tesoro contacted the Regional Director with a request for a meeting to discuss various issues, including related to moving the AVSO appraisals and good faith

negotiations forward, hopefully concluding in an amicable agreement with the BIA's trust beneficiaries to renew the right-of-way.

80.     Having not received a response from the Regional Director, Tesoro followed up on November 6, 2020.  Tesoro reiterated to the BIA and AVSO its request—which it had been making for many years—for the BIA to finally provide the parties with AVSO appraisals that could be utilized by the parties in their negotiations and to provide the parties with some direction as to what level of compensation would be necessary in a negotiated agreement to obtain BIA approval. Tesoro reiterated that tract-specific appraisals had already been completed pursuant to the AVSO Statement of Work, but had not yet been provided to the parties as a result of the BIA's directive to the AVSO.  Tesoro also reiterated that the AVSO had already completed its Market Analysis as recently as June 2020, which included 56 negotiated agreements for underground pipeline rights-of-way up to 12" in diameter.

81.     Both the tract-specific appraisals completed pursuant to the AVSO Statement of Work and the Market Analysis utilized methodologies that had already been approved by the AVSO and were available to the BIA for its use in accordance with the directives in the 2020 AS-IA Decision.  With respect to good faith negotiations, Tesoro continued to re-confirm to the BIA that Tesoro was committed to, and engaged in, good faith negotiations with the allottees.  Tesoro updated the BIA on the status of its good faith negotiations, including that Tesoro continued to obtain additional consents and agreements which then totaled approximately 108 allottees (and now total at least 130), including a majority consent on six allotted tracts in addition to the ten tribal tracts.

82.     Still receiving no response, on November 12, 2020, Tesoro again inquired with the Regional Director about a meeting to discuss these issues.  Finally, more than two weeks after its

23

initial request, on November 16, 2020, the Regional Director responded, but delivery of the response to Tesoro was delayed by a week because a letter response was placed in regular mail rather than a corresponding email response (despite repeated communications by email between the BIA and the parties' counsel throughout this matter).  As a result, the response was not received until November 23, 2020—more than three weeks after Tesoro's initial request to meet to discuss these issues.

83.     In a reply sent the same day, November 23, 2020, Tesoro updated the Regional Director on its success in obtaining additional consents from allottees and of its recently-increased offer of $102,000 per acre (including an initial payment of $52,000 per acre upon BIA approval of the renewal—$34,500 for past use plus $17,500 for the first year bonus—and an annual rental of $2,500 per acre through 2040).  This offer again far exceeded the fair market value of the right-of-way, as evidenced by the numerous appraisals conducted to date, as well as the AVSO Market Analysis issued in June 2020.

84.     Over the next two weeks, Tesoro funded and participated in a mediation with the allottees represented by the Pringle & Herigstad law firm ("**Pringle Allottees**").  The mediation occurred on December 2 and 8, 2020, and was mediated by Retired Magistrate Judge Karen Klein of the United States District Court for the District of North Dakota.  Tesoro also invited allottees represented by the Kilpatrick Townsend law firm to participate, but they declined to participate.

85.     While the mediation with the Pringle Allottees did not result in an agreement, Tesoro notified the Regional Director on December 8, 2020, that Tesoro continued to participate in active negotiations with other parties and continued to receive additional consents from allottees as a result of those negotiations based on its current offer of $102,000 per acre.

86.     On December 9, 2020, Tesoro provided the Regional Director approximately 60 recently signed allottee letters, all requesting that good faith negotiations be allowed to continue. The letters signed by those allottees who had not already entered into a consent agreement with Tesoro also requested that they be provided a copy of the AVSO appraisal materials for their use in negotiations with Tesoro.

87.     On December 11, 2020, Tesoro made yet another increased offer to all allottees. Specifically, Tesoro offered $37,500 per acre for the past use period, and $22,500 per acre one-time bonus and $2,500 per acre annual payment for the duration of the right-of-way renewal, totaling $110,000.  Each of these amounts continued to far exceed any appraised fair market value to date.  The Regional Director was informed of this new increased offer.  In fact, according to the Market Analysis, Tesoro's offer of $110,000 per acre was over three times greater than the highest amount paid for any of the 56 pipeline rights-of-way on the Reservation for allottee lands in at least the past ten years that were the subject of the AVSO Market Analysis, and perhaps ever.  It was also over thirty times greater than the amount that the AVSO Market Analysis found to satisfy the BIA regulation's fair market value requirements (*i.e.*, $3,500) for a subsurface pipeline right-of-way on the Reservation.

***The Regional Director Issues the December 15 Notification***

88.     In the face of this overwhelming evidence of continued good faith negotiations, and despite Tesoro's (and some allottees') renewed requests for AVSO appraisal materials that could be utilized by the parties in the good faith negotiations, the Regional Director issued the December 15 Notification, finding that, at that point, Tesoro's holdover of the right-of-way under 25 C.F.R. § 169.410 would be considered by the BIA to be a trespass.

89.     The December 15 Notification set forth the requirements for Tesoro to fully and finally satisfy and resolve the BIA's proceedings related to the issues that were the subject of the December 15 Notification, including as to Tesoro's past use of the right-of-way during the holdover period beginning on June 18, 2013 – payment of $3,961,907.00[9] for Back Rent or Unauthorized Use Payments plus interest, and ceasing its use of the Pipeline.

90.     To comply with the BIA's requirements to fully and finally satisfy and resolve the issues that were the subject of the December 15 Notification, Tesoro was instructed to pay this total amount of $3,961,907 and cease and desist its use of the Pipeline within thirty (30) calendar days of receipt of the December 15 Notification.

***In Order to Fully and Finally Satisfy and Resolve the BIA's Requirements for Tesoro's Past Use of the Right-of-Way From June 18, 2013, Tesoro Fully Complied With the December 15 Notification***

91.     In order to fully and finally satisfy and resolve the BIA's requirements for Tesoro's past use of the right-of-way from June 18, 2013, and to avoid being found to have occupied the right-of-way after the effective date of the BIA's trespass determination, Tesoro immediately undertook efforts to fully comply with the December 15 Notification.

92.     Tesoro timely complied with the December 15 Notification, turning off flow across the Pipeline within 48 hours of receiving the December 15 Notification (and not removing or disposing of the Pipeline).  *See* Ex. C.

93.     Tesoro also made full payment to the BIA, which the BIA accepted and provided written acknowledgement.  *See* Ex. D.  The BIA subsequently cashed the check.

---

[9] This amount was determined by the Regional Director to be $2,247,457.00, plus interest at 8% equating to $1,714,450.00.

***Various Parties Appealed the December 15 Notification***

94.     On December 29, 2020, Tesoro appealed the December 15 Notification to the IBIA.

95.     On January 13, 2021, approximately 50 individual allottees, represented by the law firms of Kilpatrick Townsend and Jenner & Block, including Lawrence S. Roberts (the "**Jenner Allottees**"), filed a notice of appeal from the December 15 Notification.

96.     Also on January 13, 2021, approximately eighty individual allottees represented by the law firm of Pringle & Herigstad (the "**Pringle Allottees**") filed a notice of appeal from the December 15 Notification.

97.     On January 13, 2021, the AS-IA assumed jurisdiction over Tesoro's appeal.

***The Assistant Secretary – Indian Affairs Issues the 2021 AS-IA Decision***

98.     On January 14, 2021, Tara Katuk Mac Lean Sweeney, in her official capacity as Assistant Secretary – Indian Affairs, issued the 2021 AS-IA Decision, affirming the December 15 Notification in its entirety.

99.     The 2021 AS-IA Decision set forth the requirements for Tesoro to fully and finally satisfy and resolve the BIA's proceedings related to the issues that were the subject of the December 15 Notification, including as to Tesoro's past use of the right-of-way during the holdover period beginning on June 18, 2013 – payment of $3,961,907.00 for Back Rent or Unauthorized Use Payments plus interest, and ceasing its use of the Pipeline.

100.     The 2021 AS-IA expressly stated, "This decision constitutes a final agency action under 5 U.S.C. 704, which is judicially reviewable."  *See* Ex. B at 2.

***The IBIA Dismisses the Allottees' Appeals***

101.    The AS-IA did not assume jurisdiction over the appeals of the Pringle Allottees or Jenner Allottees.  As such, in accordance with 43 C.F.R. § 4.332(b) and 25 C.F.R § 2.20(c), the IBIA retained jurisdiction over their appeals.

102.    On February 9, 2021, pursuant to the authority delegated to the IBIA by the Secretary of the Interior, the IBIA dismissed the appeals of the Pringle Allottees and the Jenner Allottees.

103.    On February 11, 2021, the Pringle Allottees filed a Petition To Rescind The January 14, 2021 AS-IA Decision and Petition for Reconsideration.

104.    On February 12, 2021, the Pringle Allottees filed a Petition for Attorney's Fees.

105.    On March 3, 2021, pursuant to the authority delegated to the IBIA by the Secretary of the Interior, the IBIA issued an Order denying the Pringle Allottees' petitions that had been filed on February 11, 2021 and February 12, 2021, respectively.

***The Pringle Allottees File a Lawsuit Challenging the 2021 AS-IA Decision***

106.    On February 12, 2021, the Pringle Allottees initiated a suit in this Court seeking, amongst other things, judicial review of the 2021 AS-IA Decision (the "**Pringle Lawsuit**").  *See* Civ. No. 1:21-cv-00031-DLH-CRH; *Linda Gourneau, et al v. United States Department of the Interior, et al*; in the United States District Court for the District of North Dakota.

107.    The Pringle Lawsuit alleged several due process concerns.  Specifically, the Pringle Lawsuit inaccurately alleged the AS-IA affirmed the December 15 Notification "without an opportunity of any party to be heard, except Tesoro."  Ex. I, Pringle Lawsuit Am. Compl. ¶ 30 (excludes exhibits).

***The Acting Secretary Improperly and Untimely Issued The Vacatur Decision Without Proper Notice and Despite Tesoro's Prior Detrimental Reliance Upon the December 15 Notification and 2021 AS-IA Decision***

108.    The Secretary was confirmed on March 15, 2021.

109.    The Acting Secretary, who was not appointed with the advice and consent of the Senate, did not issue the Acting Secretary's Vacatur Decision until March 18, 2021, according to the Certificate of Service.

110.    The Acting Secretary's Vacatur Decision purports to vacate in their entirety the July 2 Notification,[10] the 2020 AS-IA Decision, the December 15 Notification, and the 2021 AS-IA Decision (collectively, the "**Decisions**").  Ex. E at 4.  The Acting Secretary further purported to "return this matter to the Regional Director for consideration," purportedly directing the Regional Director to, among other things, "take such action as is necessary to address Tesoro's continued occupation of the expired right-of-way."  *Id.*

111.    The Acting Secretary's Vacatur Decision fails to recognize and/or acknowledge that Tesoro had already, months earlier, detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision and fully and finally satisfied and resolved the BIA's proceedings related to the issues that were the subject of the December 15 Notification, including as to Tesoro's past use of the right-of-way during the holdover period beginning on June 18, 2013 – cessation of its use of the Pipeline and payment of $3,961,907.00 for Back Rent or Unauthorized Use Payments plus interest.

112.    The Acting Secretary's Vacatur Decision also failed to recognize and/or acknowledge that Tesoro had already, months earlier, detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision and turned off flow across the Pipeline segment crossing

---

[10] The July 2 Notification had already been vacated by the 2020 AS-IA Decision.

the Reservation and did not remove the Pipeline from the Reservation pursuant to the compliance requirements of the December 15 Notification and 2021 AS-IA Decision.

113.   Contrary to applicable regulation, even if Tesoro had not already detrimentally relied upon and fully complied with the December 15 Notification and 2021 AS-IA Decision (and it had done so months earlier), the Acting Secretary did not provide the parties the required written notice and other regulatory requirements related to review of the Decisions.  *See, e.g.,* 43 C.F.R. § 4.5(c).

114.   The Acting Secretary improperly vacated the Decisions despite Tesoro having— months earlier—adversely changed its position in reliance on the December 15 Notification and the 2021 AS-IA Decision.

115.   Furthermore, the Acting Secretary gave no statement or indication that the determinations in the December 15 Notification and/or 2021 AS-IA Decision were erroneous.

116.   Should the Acting Secretary's Vacatur Decision be upheld, Tesoro would be deprived of, among other things, the finality achieved with respect to the issues that were the subject of the December 15 Notification and 2021 AS-IA Decision by Tesoro's full and final satisfaction and resolution of BIA's proceedings related to Tesoro's past use of the right-of-way during the holdover period beginning on June 18, 2013 which was the subject of the December 15 Notification and 2021 AS-IA Decision.  Put differently, disappointed with the prior resolution, the BIA, including through the counsel who has been representing approximately 50 individual allottees in their lawsuit and in the administrative proceedings against Tesoro for several years and now also serves as Chief of Staff for the Secretary of Interior, could simply vacate and try again, and again, and again, seeking a different result.

*In Concert With The Acting Secretary's Vacatur Decision, the Pringle Allottees Voluntarily Dismissed Their Lawsuit Challenging the 2021 AS-IA Decision*

117.    At 10:46 a.m. Central on the same day that counsel for Tesoro received the Certified Mail containing the Acting Secretary's Vacatur Order served by the Acting Secretary, the Pringle Allottees filed a Notice of Dismissal Without Prejudice Pursuant to Federal Rule of Civil Procedure 41(a).  Tesoro's responsive pleading in the Pringle Lawsuit was not due until April 26, 2021.  Therefore, allottees' counsel orchestrated a dismissal of the pending federal court challenge, purportedly based on the Acting Secretary's Vacatur Decision, prior to Tesoro and/or other parties having had an opportunity to file counterclaims or cross-claims in that litigation.[11]

*The BIA Has Not Timely Complied With Tesoro's Requests For Information Under FOIA.*

118.    On or about July 31, 2020, Tesoro submitted a FOIA request to the Office of the Regional Director, Bureau of Indian Affairs, Great Plains Regional Office through FOIA Officer Marietta ShortBull.  This request is attached as Exhibit J  and its contents are fully incorporated as allegations herein.

119.    On or about August 3, 2020, Tesoro submitted a FOIA request to the Office of the Superintendent, Fort Berthold Reservation, Bureau of Indian Affairs, through FOIA Officer Marietta ShortBull.  This request is attached as Exhibit K and its contents are fully incorporated as allegations herein.

120.    On or about August 3, 2020, Tesoro submitted a FOIA request to the Office of the Solicitor (including all relevant subdivisions), U.S. Department of the Interior, through FOIA

---

[11] Tesoro reserves all of its rights to challenge the BIA's and other parties' actions and/or decisions, including without limitation, in the event the Court determines that the Acting Secretary's Vacatur Decision was not improper and/or the BIA and/or other parties seek to take further administrative or other action.

Officer Lance Purvis.   This request is attached as Exhibit L and its contents are fully incorporated as allegations herein.

121.    On or about August 3, 2020, Tesoro submitted a FOIA request to the Office of the Director, Bureau of Indian Affairs, though FOIA Officer Marietta ShortBull.   This request is attached as Exhibit M and its contents are fully incorporated as allegations herein.

122.    On or about October 28, 2020, Tesoro submitted a follow-up request to its August 3, 2020 requests for information related to the July 2, 2020 Notification. This request, addressed specifically to Great Plains Regional Director Timothy LaPointe, requested additional materials not included in the administrative record related to the July 2, 2020 Notification.  The request was based in part on an October 23, 2020 phone communication by Tesoro's counsel with Mr. LaPointe and his staff, during which it became evident that there is a broad range of FOIA-requested materials that would not (and ultimately were not) included in the administrative record produced to Tesoro.  Tesoro agreed to the Regional Director's proposed response date of November 18, 2020, and agreed to allow the FOIA production include only materials not included in the administrative record.  This request is attached as Exhibit N  and its contents are fully incorporated as allegations herein.

123.    On or about October 30, 2020, Tesoro submitted a request for information to the Director, Appraisal and Valuation Services Office, U.S. Department of the Interior through FOIA Officer Leah Fairman.  This request is attached as Exhibit O  and its contents are fully incorporated as allegations herein.

124.    Tesoro's requests for information requested fast-tracked consideration and release of all requested information.

125.    As of the filing of this Complaint, Tesoro has not received the documents responsive to all of its requests in the manner and format prescribed by FOIA.

126.    Tesoro has not received any objections to its FOIA requests or claims that materials may be withheld from disclosure pursuant to FOIA or other law.

127.    The agencies from which Tesoro has requested information have failed to adhere to applicable time limits in which to make a determination.  Therefore, Tesoro is not required to exhaust any further administrative process or appeal before seeking judicial review.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

128.    Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

129.    Plaintiff and Defendants are interested parties under the 2020 AS-IA Decision, the December 15 Notification, the 2021 AS-IA Decision, and the Acting Secretary's Vacatur Decision.

130.    An actual case or controversy exists between the parties as to whether Defendants had the requisite authority to vacate, in an untimely manner, an agency action which on its face indicated it was final, upon which Tesoro has adversely changed its position in reliance thereon, and without following the procedures and requirements set forth by law and regulation.  In addition, an actual case or controversy exists between the parties as to whether Defendants can seek to re-initiate administrative proceedings and claims after Tesoro has already effected a full accord and satisfaction with respect to the December 15 Notification and 2021 AS-IA Order, including full payment of the $3,961,907.00 and ceasing the use of its Pipeline.

131.    Federal regulations governing the Secretary's authority to review or remand Interior decisions require the Secretary to provide written notice to parties that such review is occurring.  *See, e.g.,* 43 C.F.R. § 4.5.

132.    The Acting Secretary provided no notice to the parties that he was undertaking any review of the Decisions.  Defendants also did not provide the other requisite notices and materials.

133.    The Acting Secretary was not appointed with the advice and consent of the Senate, which violates the Appointments Clause of the Constitution.  *See Nat'l Labor Relations Bd. v. SW General, Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) (appointing principal officers under the Federal Vacancies Reform Act without advice and consent of the Senate raises "grave constitutional concerns").  In addition, the Acting Secretary did not issue his Vacatur Decision until March 18, 2021—three days after Rep. Debra Anne Haaland had already been confirmed as the Secretary of Interior and had already occupied the position.  Therefore, the Acting Secretary did not have requisite authority to vacate a final agency action and/or issue the Vacatur Decision.

134.    Moreover, there are express limits to an agency's authority to review and/or vacate its own actions.  For example, when a party relies on an agency decision with the agency's knowledge, the agency cannot reverse, particularly without a showing the initial decision was erroneous.  There can be no question that the Defendants had actual knowledge – months prior to the Acting Secretary's Vacatur Decision – that Tesoro had detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision and fully complied with the BIA's requirements therein for a full and final resolution of the issues that were the subject of those decisions.  *See* Ex. C; *see also* Ex. D.

135.    Defendants, with full knowledge that Tesoro relied on the December 15 Notification and the 2021 AS-IA Order, vacated the Decisions without any proclamation—let alone a showing—that the December 15 Notification or the 2021 AS-IA Order was erroneous. Instead, the Acting Secretary vacated the Decisions purportedly because of allegations that parties were not afforded due process—an issue that was already properly before this Court in the Pringle

34

Lawsuit.  Defendants cannot seek to unilaterally review and/or vacate the December 15 Notification and 2021 AS-IA Decision as Tesoro has already, months earlier, detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision, and Defendants have failed to show that the December 15 Notification and/or 2021 AS-IA Decision were erroneous.

136.    Furthermore, an agency also cannot review and/or vacate its own actions after an unreasonable period of time has passed.  Here, the Acting Secretary's Vacatur Decision seeks to vacate the prior final agency action months after the date by which the agency had given Tesoro to comply with the requirements of the December 15 Notification and 2021 AS-IA Decision. Defendants cannot seek to unilaterally review and/or vacate the December 15 Notification and 2021 Decision as it is not reasonably timely.

137.    In addition, the Acting Secretary's Vacatur Decision and review and/or vacatur of the December 15 Notification and 2021 AS-IA Decision are precluded by the doctrine of accord and satisfaction.  The Defendants set forth the requirements in the December 15 Notification and 2021 AS-IA Decision for Tesoro to fully and finally satisfy and resolve the Defendants' claims and proceedings related to Tesoro's past use of the right-of-way during the holdover period beginning on June 18, 2013 – payment of $3,961,907.00 for Back Rent or Unauthorized Use Payments, plus interest, back to June 18, 2013, and ceasing its use the Pipeline.  Tesoro fully completed and satisfied each of these requirements.  Defendants have also accepted the benefits of Tesoro's full accord and satisfaction.  *See, e.g.,* Ex. D.

138.    Defendants have unequivocally purported to vacate the Decisions and directed the Regional Director to "take action as is necessary to address Tesoro's continued occupation of the expired right-of-way," and "issue a new decision… ."  Acting Secretary's Vacatur Decision at 4.

139.    Tesoro has fully complied with the December 15 Notification and 2021 AS-IA Order to fully and finally discharge any and all obligations and requirements related to the issues that were the subject of the December 15 Notification and 2021 AS-IA Decision, including without limitation, terminating all product flows across the Reservation and payment of $3,961,907.00 for Back Rent or Unauthorized Use Payments plus interest.

140.    Defendants' threat of subjecting Tesoro to new and/or additional proceedings and claims related to the issues that were the subject of the December 15 Notification and/or 2021 AS-IA Decision despite valid accord and satisfaction constitutes a controversy that touches the legal relations of the parties having adverse legal interests.

141.    Declaratory relief is appropriate, including without limitation, because the Court can provide an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged.

142.    Tesoro is entitled to the following declarations:

a)  the Acting Secretary did not have the requisite authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision;

b)  even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was contrary to established regulatory procedure and law, and therefore, the Acting Secretary's Vacatur Decision was improper, null, and void for all purposes;

c)  even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was issued with Defendants' knowledge of Tesoro's prior detrimental reliance upon the Defendants' requirements set forth in the December 15 Notification and 2021 AS-IA Decision, and the Acting Secretary's Vacatur Decision did not demonstrate that the December 15 Notification and/or 2021 AS-IA Decision were erroneous; and therefore, the Acting Secretary's Vacatur Decision was improper, null, and void for all purposes;

d)  even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was not reasonably timely; and therefore, it was improper, null, and void for all purposes;

e)  Tesoro's payment of $3,988,114 and ceasing use of its Pipeline in compliance with the Defendants' requirements in the December 15 Notification and 2021 AS-IA Decision constitute valid accord and satisfaction to fully and finally discharge any and all obligations and requirements related to the issues and/or claims that were the subject of the December 15 Notification and 2021 AS-IA Decision, including without limitation, $3,961,907.00 for Back Rent or Unauthorized Use Payments plus interest;

143.  There is no adequate remedy, other than the relief requested herein, by which the controversy may be resolved.

144.    As a result, Tesoro is entitled to declaratory judgment (including without limitation those declarations set forth above) and injunctive relief declaring the Acting Secretary's Vacatur Decision a nullity for all purposes and to enjoin any further administrative proceedings pursuant to the Vacatur Decision related to the issues and decisions that are the subject of the December 15 Notification and 2021 AS-IA Decision, pending resolution of any and all proper judicial review of the 2021 AS-IA Decision, including without limitation, any challenges that any parties may have related to due process concerns such as those raised in the Pringle Lawsuit.[12]

### SECOND CLAIM FOR RELIEF
**(Violation of the APA)**

145.    Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

146.    The APA requires courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2).

147.    The Acting Secretary's Vacatur Decision was, among other things, ultra vires; arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  This agency action lacked a rational or reasoned basis and violated Tesoro's Fifth Amendment Due Process rights.

148.    The Acting Secretary's Vacatur Decision is ripe for review for multiple reasons, including because it imposes an obligation, denies a right, and/or fixes some legal relationship.

---

[12] Tesoro reserves all of its rights.  *See* Footnote 11.

149.    The Acting Secretary's Vacatur Decision is ripe for purposes APA review because, among other things, it affects Tesoro's legal relationship with the Defendants.  Tesoro's payment of $3,988,114 constituted valid full and final accord and satisfaction.  In addition, the Acting Secretary's Vacatur Decision seeks to vacate decisions and determinations that Defendants previously indicated were themselves final agency actions.  Furthermore, the Acting Secretary's Vacatur Decision seeks to deprive the parties of the right to challenge and/or seek review of the 2021 AS-IA Decision by purporting to vacate the Decisions while an APA challenge was already pending (and Tesoro's responsive pleading and/or counterclaims were not yet due).

150.    The Acting Secretary's Vacatur Decision seeks to improperly divest this Court of jurisdiction over review of the December 15 Notification and 2021 AS-IA Decision

151.    The Acting Secretary's Vacatur Decision is the antithesis of rational and justified decision-making, as it is arbitrary and capricious, contrary to law, and in excess of the Acting Secretary's authority.

152.    The Acting Secretary's Vacatur Decision is ultra vires because it was issued by Scott de la Vega, the Associate Solicitor, General Law (Unified Region 12) within the Department of the Interior, but purporting to act in his capacity as Acting Secretary for the Department of the Interior, after the Secretary had already been confirmed.

**The Vacatur Decision Was Contrary to Interior Regulations and Law**

153.    Authority to reconsider final agency action is limited, and the Acting Secretary's Vacatur Decision was contrary to law and regulation.

154.    *First*, Interior regulations create an simple, yet explicit procedure when the Secretary chooses to review the decision of an Interior employee.  Specifically, the Secretary must notify the parties and appropriate Departmental personnel, *in writing*, of his/her review of that

decision.  43 C.F.R. § 4.5.  No such notification of review issued; instead, the Acting Secretary just unilaterally (purports) to vacate the prior decisions.

155.    The failure of the Acting Secretary to provide Tesoro written notice of his review was therefore in violation of Interior Regulations and unlawful under the APA.

156.    *Second*, where a party relies on an agency decision and the agency knew, or should have known of such reliance, the agency cannot reverse, particularly when there is no showing the initial decision was erroneous.

157.    Here, Defendants were fully aware that Tesoro had detrimentally relied upon the December 15 Notification and the 2021 AS-IA, months before, as Tesoro paid the $3,988,114 for the Back Rent and Unauthorized Use Payments and ceased its use of the Pipeline.

158.    Despite this reliance, the Acting Secretary issued the Vacatur Decision without providing any assertion that the December 15 Notification and/or the 2021 AS-IA Decision were erroneous.  The Acting Secretary's Vacatur Decision was therefore contrary to law and unlawful under the APA.

159.    *Third*, an agency also cannot review and/or vacate its own actions after an unreasonable period of time has passed.  Here, the Acting Secretary's Vacatur Decision seeks to vacate the prior final agency action months after the date by which the agency had given Tesoro to comply with the requirements of the December 15 Notification and 2021 AS-IA Order. Defendants cannot seek to unilaterally review and/or vacate the December 15 Notification and 2021 Decision as it is not reasonably timely.

160.    The Acting Secretary's Vacatur Decision was also contrary to regulatory intent and affirmative evidence.

*The Acting Secretary's Vacatur Decision Failed to Properly Explain the Reasoning and Justification for the Underlying Conclusions*

161.    In addition to being contrary to law, the Acting Secretary's Vacatur Decision also failed to provide rational justification to support the decision, rendering it arbitrary and capricious.

162.    *First*, the Acting Secretary provided no reasoning or suggestion that reconsideration would result in a different determination or that the December 15 Notification and/or 2021 AS-IA Decision were erroneous.  As discussed *supra*, lack of reasoning was contrary to law.

163.    Instead, the Acting Secretary purportedly based his Vacatur Decision on alleged due process concerns.  Ex. E, at 3–4.  Under this reasoning, any interested party could allege due process violations, thereby creating indefinite uncertainty as to finality in agency decisions and actions.

164.    Moreover, the Acting Secretary's purported concern—due process—was already before this Court in the Pringle Lawsuit.  This Court had jurisdiction over any due process concerns related to the December 15 Notification and/or 2021 AS-IA Decision.  The Acting Secretary's Vacatur Decision was therefore unnecessary and only served to generate regulatory uncertainty and discourage reliance on agency orders.

165.    *Second*, the Acting Secretary specifically directed the Regional Director to "take such action as is necessary to address Tesoro's continued occupation of the expired right-of-way[.]" Ex. E, at 4.

166.    The Acting Secretary never provided any explanation as to why any action was necessary to address Tesoro's "continued occupation" of the right-of-way.  Consistent with the requirements of the December 15 Notification, Tesoro ceased use of the Pipeline and left in place as required.

167.    Given that Tesoro was not using the Pipeline, the Acting Secretary should have provided explanation as to the directions contained in his decision, but he did not.  This failure to explain his reasoning was arbitrary and capricious and unlawful under the APA.

168.    The agency's action here is arbitrary and capricious because it fails to provide a rational or justifiable explanation for the underlying conclusions therein.   Furthermore, the decision is contrary to law.

169.    The arbitrary and capricious nature of the BIA's action is ongoing, because the Acting Secretary's Vacatur Decision purports to re-open the administrative process with respect to the issues that were the subject of the December 15 Notification and 2021 AS-IA Decision while Lawrence S. Roberts, who has provided legal representation to 50 allottees for several years in this matter by participating in the administrative proceedings and filing suit against Tesoro on behalf of the allottees, is now the Chief of Staff to the Secretary of the Interior.

170.    Accordingly, the Acting Secretary's Vacatur Decision is unlawful under the APA and must be set aside.

### THIRD CLAIM FOR RELIEF
**(Violation of Due Process Under the Fifth Amendment)**

171.    Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

172.    On January 13, 2021, the AS-IA timely took jurisdiction over Tesoro's appeal of the December 15 Notification, pursuant to 25 C.F.R. § 2.20(c).

173.    Two other groups of allottees also appealed the December 15 Notification, but the AS-IA did not assume jurisdiction over those appeals.  Consequently, those appeals were before the IBIA.  The IBIA, exercising authority delegated by the Secretary, subsequently dismissed the appeals and denied the Pringle Allottees' Petition to Rescind or Reconsider.

174.     On January 14, 2021, the AS-IA issued the 2021 AS-IA Decision, upholding the December 15 Notification.  The 2021 AS-IA Decision stated that it was final agency action.

175.     In reliance on the December 15 Notification and 2021 AS-IA Decision, Tesoro paid the required amount of nearly $4 million within the timeframe required by the BIA.

176.     In reliance on the December 15 Notification, Tesoro acted within hours, and at considerable expense, to cease operations on its pipeline, in compliance with BIA's order to "immediately" cease-and-desist operations within the 30-day compliance timeframe.

177.     Tesoro has a protected property interest in the time, money, and labor expended in reliance on the December 15 Notification and the 2021 AS-IA Decision.

178.     Tesoro has a protected interest in the finality of the December 15 Notification and 2021 AS-IA Decision, on which it relied in making the decision to pay the nearly $4 million required by the BIA, and to cease its use of the Pipeline, at significant expense.

179.     The Acting Secretary was not authorized to reconsider the BIA's final agency action.

180.     To the extent the Acting Secretary had authorization to reconsider the BIA's final agency action, Tesoro, as a regulated party, was entitled to notice from the Acting Secretary that he was reconsidering the 2021 AS-IA Decision and that such reconsideration happen within a reasonable time and prior to Tesoro having detrimentally relied upon the December 15 Notification and 2021 AS-IA Decision.

181.     Tesoro was deprived of its protected interests by the Acting Secretary's Vacatur Decision in violation of the Due Process Clause.  The Acting Secretary's Vacatur Decision was issued without notice or any opportunity for input by Tesoro.

182.   The Acting Secretary's Vacatur Decision was not issued within a reasonable time, issuing months after the time that BIA required for payment and cessation of Tesoro's use of the Pipeline; months after the AS-IA issued the 2021 AS-IA Decision which it described as a final agency action; more than a month after the IBIA dismissed the allottees' appeals, and more than two weeks after the IBIA denied reconsideration.  During this time, Tesoro acted in reliance upon the December 15 Notification and 2021 AS-IA Decision by paying the required amount and ceasing its use of the Pipeline in order to fully and finally satisfy the issues that were the subject of the December 15 Notification and 2021 AS-IA Decision.

183.   Because the Acting Secretary's Vacatur Decision was issued without proper notice, not within a reasonable time, and after Tesoro's reliance upon the December 15 Notification and 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision does not comply with the requirements of due process.

184.   Tesoro has a legitimate claim of entitlement to the money, time, and labor that it has been forced to expend—and that it risks being forced to expend—as a result of the December 15 Notification, the 2021 AS-IA Decision, and the Acting Secretary's Vacatur Decision, because Tesoro was entitled to rely on the Defendants' requirements for obtaining full and final resolution and finality of the December 15 Notification and 2021 AS-IA Decision.  Tesoro had a right to rely on the expressed finality of the December 15 Notification and 2021 AS-IA Decision that required Tesoro's compliance within 30 days—and months prior to the Acting Secretary's Vacatur Decision.

185.   The Acting Secretary's Vacatur Decision, and all subsequent remand proceedings, must be enjoined because they violate the Due Process Clause.

## FOURTH CLAIM FOR RELIEF
### (Violation of FOIA)

186.    Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

187.    Tesoro has made multiple requests for information from United States agency, pursuant to its right to information under FOIA.  The requests are attached to this complaint.  *See* Exs. J-O.

188.    The agencies and its officers from whom Tesoro has requested information under FOIA have failed to comply with applicable time limits.  They did not make a determination on Tesoro's request within 20 days of receiving Tesoro's requests.

189.    As of the time of filing of this Complaint, Tesoro has received no responsive information and/or documents in a manner or format specified by FOIA.

190.    Tesoro has not received any determination regarding its requests for information, including but not limited to, claims that the agency has granted or denied Tesoro's requests or that the agenc(ies) are entitled to withhold information pursuant to FOIA or other applicable law.

191.    None of the exceptions to disclosure in FOIA apply to permit the agencies to withhold information.

192.    The Court should issue an order to enjoin the agency from withholding agency records and to order the search for, and processing and production of any agency records improperly withheld from Tesoro.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, Plaintiff Tesoro High Plains Pipeline Company, LLC respectfully requests that the Court enter judgment in its favor and against Defendants on each Claim for Relief set forth herein, and issue the following relief:

a.      Declare that the Acting Secretary did not have the requisite authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, and therefore, the Acting Secretary's Vacatur Decision was improper, null, and void for all purposes;

b.      Declare that, even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was contrary to established regulatory procedure and law, and therefore, the Acting Secretary's Vacatur Decision was improper, null, and void for all purposes;

c.      Declare that, even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was issued with Defendants' knowledge of Tesoro's prior detrimental reliance upon the Defendants' requirements set forth in the December 15 Notification and 2021 AS-IA Decision, and the Acting Secretary's Vacatur Decision did not demonstrate that the December 15 Notification and/or 2021 AS-IA Decision were erroneous, and therefore, the Acting Secretary's Vacatur Decision was improper, null, and void for all purposes;

d.      Declare that, even if the Acting Secretary had possessed the authority to issue the Acting Secretary's Vacatur Decision and/or to review and/or vacate the December 15 Notification and/or 2021 AS-IA Decision, the Acting Secretary's Vacatur Decision was not reasonably timely, and therefore, it was improper, null, and void for all purposes;

e.      Declare that Tesoro's payment of $3,988,114 and ceasing use of its Pipeline in compliance with the Defendants' requirements in the December 15 Notification and 2021 AS-IA

Decision constitute valid accord and satisfaction to fully and finally discharge any and all obligations and requirements related to the issues and/or claims that were the subject of the December 15 Notification and 2021 AS-IA Decision, including without limitation, $3,961,907.00 for Back Rent or Unauthorized Use Payments plus interest;

     f.     Declare that the Acting Secretary's Vacatur Decision is a nullity for all purposes;

     g.     Declare that the Defendants violated the APA by issuing the Acting Secretary's Vacatur Decision;

     h.     Enter an order setting aside the Acting Secretary's Vacatur Decision for all purposes;

     i.     Enjoin any further administrative proceedings in furtherance of and/or pursuant to the Acting Secretary's Vacatur Decision related to the issues and decisions that are the subject of the December 15 Notification and 2021 AS-IA Decision, pending resolution of any and all proper judicial review of the 2021 AS-IA Decision, including without limitation, any challenges that any parties may have related to due process concerns such as those raised in the Pringle Lawsuit;

     j.     Enjoin Defendants from any further participation by, or involvement from, and communications with, Chief of Staff to the Secretary of the Interior, Lawrence S. Roberts, in connection with the matters that are the subject of this lawsuit, the Pipeline, the December 15 Notification, the 2021 AS-IA Decision, and the Acting Secretary's Vacatur Order.

     k.     Order Defendants to immediately process all requested records;

     l.     Order Defendants to conduct a thorough search for all responsive records;

     m.     Order Defendants to promptly disclose the requested records in their entirety and make copies available to Plaintiff;

n.       Award Plaintiff its costs and reasonable attorneys' fees incurred in this lawsuit

under 5 U.S.C. § 552(a)(4)(E);

o.       Award Tesoro all other reasonable attorneys' fees and costs to the extent allowed

by law; and

p.       Grant Plaintiff such other relief as may be necessary and appropriate or as the Court

deems just and proper.


Dated: April  23, 2021                    Respectfully submitted,

                                          NORTON ROSE FULBRIGHT US LLP


                                          */s/ Jeffrey A. Webb*_____
                                          **Jeffrey A. Webb**
                                          Texas State Bar No. 24053544
                                          jeff.webb@nortonrosefulbright.com
                                          111 W. Houston Street, Suite 1800
                                          San Antonio, TX  78205-3792

                                          **Robert D. Comer**
                                          Colorado State Bar No. 16810
                                          bob.comer@nortonrosefulbright.com
                                          1225 Seventeenth Street, Suite 3050
                                          Denver, CO 80202

                                          **Matthew A. Dekovich**
                                          Texas State Bar No. 24045768
                                          matt.dekovich@nortonrosefulbright.com
                                          1301 McKinney Street, Suite 5100
                                          Houston, TX  77010

                                          Counsel for Plaintiff

## CERTIFICATE OF SERVICE

On April 23, 2021, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, District of North Dakota, via ndd_clerksoffice@ndd.uscourts.gov.


*/s/ Jeffrey A. Webb*
Jeffrey A. Webb